## BARTLETT v. TINSLEY, Appellant.

### Division Two, June 9, 1903.

1. **Dower:** ASSERTION: ESTOPPEL: .DAMAGES FOR BREACH OF HUSBAND'S WARRANTY. The widow is not estopped by the Missouri statute (sec. 8839, R. S. 1889) from asserting dower in lands owned by her husband during the marriage until all claims for damages for breach of the warranty contained in her husband's deed, have been ascertained and satisfied. (Following and reaffirming, Bartlett v. Ball, 142 Mo. 28.)

2. ————: PAROL TRUST IN LANDS. A gift by a deed, absolute on its face, will defeat a parol trust or reservation in the donor's favor. Hence, the widow's dower in lands can not be defeated by a showing that the husband's grantor, who had conveyed them to the husband by a deed absolute on its face, reserved a parol trust therein, for unless such reservation can be established by some writing, it is void.

3. ————: UNDER WHAT STATUTE. The widow's dower attaches under the statute in force at the time of her husband's death.

4. ————: STATUTE OF 1889: HUSBAND'S POSSESSION. Under the statute of 1889 (sec. 4535, R. S. 1889), which provides that "the widow shall have dower of real estate, although there may have been no actual possession or recovery of possession by the husband in his lifetime," the surviving widow, whose non-resident husband sold land in Missouri in 1830 and died in 1893, need not show actual possession in him in order to entitle her to dower.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,*
Judge.

AFFIRMED.

*Ball & Sparrow* and *N. W. Morrow* for appellant.

(1) The husband of appellant was never seized of an estate in fee of the premises in question. He merely held them in trust for another. (2) The property was conveyed by deed of general warranty by the husband of respondent in 1830, which was not executed by the wife, and her inchoate right of dower, if she had any, constituted a breach of the covenant at the

time it was made.   (3)   The husband died in 1893 and the dower right of the widow, if any, was subject to the provisions of section 8839, Revised Statutes 1889, which operates as an estoppel against the widow until all claims for damages for breach of the covenant contained in Bartlett's deed are ascertained and satisfied. (4)   Parties resident in this State should not be compelled to go into a foreign jurisdiction in order to hunt up property to satisfy any damages sustained by the breach of a covenant of warranty in the conveyance of land located here.   In support of these positions we refer generally to the following cases:   Dickson v. Desire, 23 Mo. 151; Metcalf v. Smith, 40 Mo. 572; Magnire v. Riggin, 44 Mo. 514; State Savings Ass'n v. Kellogg, 52 Mo. 583; Titterington v. Hooker, 58 Mo. 593; Walker's Adm'r v. Deaver, 79 Mo. 664; Blevins v. Smith, 104 Mo. 583; Crosby v. Farmers' Bank, 107 Mo. 436; Foote v. Clark, 102 Mo. 394; Rumsey v. Otis, 133 Mo. 85; Sauer v. Griffin, 67 Mo. 654; Whittlesy v. Brohammer, 31 Mo. 107.

*J. H. Blair & Son* for respondent.

(1)   The deed from Marshall Mann and wife to William H. Bartlett is absolute on its face and purports to convey a fee simple title, and though it had been executed under a parol trust in favor of Mann, the trust would have been void, and the gift unconditional. Thornton on Gifts (Ed. 1893), p. 373, sec. 368. Though not within the issues made by the pleadings, appellant undertakes to establish a trust by parol evidence, to the effect that Bartlett never claimed to own the fee, was never in the actual possession or occupancy of the premises; never paid anything for the premises, or received the purchase money from Mann, and that both Mann and Bartlett were financially embarrassed. Conceding, for the sake of the argument, that the evidence established those facts, then what of it?   Those facts do not raise an implied trust, and an express trust could

only be proved by a writing signed by Marshall Mann. Sec. 3416, R. S. 1899; Price v. Kane, 112 Mo. 412; Rogers v. Raney, 137 Mo. 598; Hillman v. Allen, 145 Mo. 638; Curd v. Brown, 148 Mo. 82. There is not a scintilla of evidence on which to base the contention that W. H. Bartlett held the title to the land in trust for Marshall Mann. The letter from Marshall Mann to said Bartlett, the decree of the court in the case of W. H. Bartlett against William Luce and Samuel Shaw, remote grantors of the defendant, and the evidence in its entirety, establish beyond a doubt that Bartlett owned the land in fee. The defendant derives his title through William Luce and Samuel Shaw, and is their privy. And the judgment rendered in that case to the effect that Wm. H. Bartlett had owned the equitable title to the land is, as to the defendant, final, and *res judicata,* and he is estopped to contend otherwise here. State v. St. Louis, 145 Mo. 567; State v. Johnson, 123 Mo. 43; Henry v. Woods, 77 Mo. 280; Haley v. Bagley, 37 Mo. 364; Greenleaf's Ev., sec. 189; Story's Eq., sec. 165. (2) At the time Mann conveyed the land to Bartlett, he (Bartlett) was under eighteen years of age. Only a small portion of the land was then in cultivation the remainder being in timber and brush. Appellant made a futile effort to prove that Bartlett never had actual possession of the land. In the absence of such proof the law presumes that possession follows the title. Renshaw v. Lloyd, 50 Mo. 368; Bradley v. West, 60 Mo. 33; Turner v. Baker, 64 Mo. 245; Brown v. Hartzell, 87 Mo. 564. Actual possession by Bartlett was not essential to entitle plaintiff to dower. If he was seized in law, that was as effective as seizing in fact. Sec. 4535, R. S. 1889, law in force at Bartlett's death; Davis v. Evans, 102 Mo. 164; Gentry v. Garth, 10 Mo. 224; Warren v. Williams, 25 Mo. App. 22; Ellis v. Kyger, 90 Mo. 600; Cazier v. Hincky, 143 Mo.

Vol 175 mo—21

203; Tiedeman, Real Prop., sec 121; 1 Scrib. on Dower, sec. 24, p. 251.

FOX, J.—This is a suit instituted by Harriet Bartlett, widow of William H. Bartlett, deceased, for the assignment of dower in lots 1, 2, 5 and 6, in block 19, in William Luce's addition to the city of Louisiana, Pike county, Missouri. It was instituted on the —— day of May, 1898, and tried in December, 1898. There was judgment for plaintiff, a motion for a new trial, and in arrest of judgment, and appeal duly perfected.

The lots in question are a part of a tract of seventy acres conveyed to William H. Bartlett, husband of respondent, by deed from his mother, Elizabeth Mann, and his stepfather, Marshall Mann, dated April 22, 1822, the consideration being parental love and affection. On the 4th day of February, 1830, respondent was married to the said William H. Bartlett, and on the 18th day of March, 1830, the said Bartlett executed a power of attorney, in which he was not joined by respondent, vesting his attorney with full power and authority to sell and convey the said tract of land. The same was sold under the power given, and a deed executed to one Edward Charless on the 15th day of November, 1830. The deed contains the following covenant of warranty: "And I, the said Bartlett, doth further covenant and agree for himself, his heirs, executors and administrators, to warrant and defend said title in the said Edward Charless free from all claim or claims, or by any person in, through, or by him, the said Bartlett, or in, through or by any other person or persons whosoever, or by any nature whatever in the premises fully and completely."

The appellant claims title through mesne conveyance from Charless, about which there is no controversy.

W. H. Bartlett, husband of plaintiff, died at Yonk-

ers, New York, on the 11th day of February, 1893, leaving a large estate.

Plaintiff testifies that she knew about the execution of the power of attorney by her husband to Mann shortly after their marriage—that she was not asked to sign it.

It sufficiently appears from the pleadings and evidence in the cause that the property in question is situated in Luce's addition to the city of Louisiana, embracing the resident portion of said city.

The letter of Mann, requesting power of attorney from W. H. Bartlett, was introduced in evidence. It is as follows:

"Louisiana, February 20, 1830.

"Dear William:

"A short time after I wrote to you I tuck a notion to gow to Tennessee, and just got home last nite, and I received your favor of the 27th December, whitch gave me great pleashur to hear from you. When I was in Tennessee I formed an acquaintance with a lady, an old made about thirty years of age. I set in to coting of her and got her consent to marry, and I am to return back and marry her in May next. She is a verray fine woman, strict methods and has about twelve or fifteen slaves and sum money. She is not as well accomplished as I woold wish; I woold have married hur when I was there but my embarresments kept me from it an if you will doo me the favor to let me sell this peas of land that you have hear it will cler me of my embarresments. I can get a good price for it and I will do more than double reward you for your goodness in so doing. I can sell my property hear in town, but I do not wish to sell it for I wish to have a home to gow too when I marry, or I can sell Tom, but to sell him is like parting with a child; and if you conclude to let me sell the lands hears is the Number and description of the land enclosed in the within letter. Yours and your ladys company would be verray grati-

fying to me if I could have the pleashur of enjoying that happiness. Sanders got a fall from a horse about two weeks agow and it had liked to killed him. He got hold of your letter that you wrote to me and he accused me of writing to you but I denied it. I wish you to not let him now anything about my writing to you concearning his conduct, him and me will start in a few days on board of ower boat to Fever river. I wish to get out of my embarresments before I marry for I doo not wish to deseave the person that I am going to marry as she is not acquainted with my circumstances all tho she is very well acquainted with my fathers family for she lives about two miles from them. Pheby and Sam Shaw sends their best respects to you and Mrs. Bartlett. Sanders and my best love to Mrs. Bartlett nothing more at present but remains yours sincerely,

"W. H. C. Bartlett.                    M. MANN.

"N. B. Pleas send me a power of attorney to sell the land if you can grant me the favor that I requested of you and I will give you any security what. you may request.

"W. H. C. B.                    M. MANN."

The power of attorney was executed by Bartlett as requested; but his wife, now the respondent, did not join in such instrument.

Marshall Mann, in pursuance of the power of attorney executed and delivered to him, conveyed the land to one Charless.

There was some testimony tending to show that Bartlett had never been in the actual possession of the land, in which the dower of the plaintiff is sought to be admeasured, and that neither Marshall Mann nor Bartlett had any property at the time of the execution of the deeds introduced in evidence, and that Mann was financially embarrassed.

It is disclosed by the record that a jury had been empaneled to try this cause, and at the close of the evidence by agreement of parties, the jury was.

·discharged and the cause submitted to the court.   Appellant prayed the court to give instructions as follows:

"The court instructs the jury that under the pleadings and all the testimony given in evidence in the case the verdict should be for the defendant.

"The court instructs the jury that if you believe from the evidence in the case that the conveyance from Marshall Mann and wife of April 22, 1822, to W. H. Bartlett read in evidence in this case, was made by Mann not for the purpose of conveying the ownership of said property to said Bartlett, but for the purpose of having said Bartlett hold the title for him, the said Marshall Mann, and that the same was so held by said Bartlett until the execution by him of the power of attorney, read in evidence in this case, of date November 15, 1830, from said Bartlett to said Mann and that the same was executed by him for the purpose of reinvesting said Mann with the title to said land for his own use and benefit, or for the purpose of permitting him to dispose of the same for his own use and benefit in accordance with the original purpose of the conveyance of said land from Mann to Bartlett as hereinafter stated, then the verdict should be for defendant."

Which instructions the court refused to give.   To which ruling and action of the court defendant duly excepted at the time and saved his exceptions.

Upon the submission of the cause to the court, it made the following finding and entered the decree as herein quoted:

"Now at this day come the parties by their counsel and a jury having been waived by said parties, all and singular the matters are submitted to the court, which having been seen and heard, the court doth find that the plaintiff, Harriet Bartlett, on the 4th day of February, A. D. 1830, married William H. Bartlett at the city of Newport, in the State of Rhode Island; that she lived with him thereafter as his wife until the time

of his death; that the said William H. Bartlett died on the 11th day of February, A. D. 1893, in the city of Yonkers, county of Westchester, State of New York. The court further finds that during the existence of said marriage, William H. Bartlett was seized and possessed in fee simple of the following real estate situated in the county of Pike and State of Missouri, to-wit:   Beginning at a stake on the west boundary line of the county commissioner's land, from which stake a white oak 24 inches in diameter bears north 89 degrees east 52 links, and a white oak 18 inches in diameter bears north 75 degrees west 47 links; thence runs west 35 chains and 70 links to the west boundary line of section number 18 at a stake from which a white oak 14 inches in diameter bears north 62 degrees east 5 links, and a dogwood 6 inches in diameter bears south 6 degrees east 13 links; thence south 14 chains and 70 links with said line to a black oak; thence east 20 chains to a stake; thence south 7 chains and 10 links to a stake on the south boundary line of said section; thence east with said line to the quarter section corner; thence north 18 chains to a stake on the commissioner's line; thence with said line to the place of beginning, containing 70 acres and being part of said section 18 in township 54, range 1 west. The court further finds that during the existence of said marriage, to-wit, on the 15th day of November, A. D. 1830, said William H. Bartlett by his lawful attorney in fact, one Marshall Mann, sold and conveyed said real estate to one Edward Charless in fee simple, and that the plaintiff was not a party to said conveyance, and that she did not then nor at any other time relinquish, convey or otherwise dispose of her right to dower in said real estate.   The court further finds that said land has been subdivided into what is known as Luce & McAlister's addition, and William Luce's addition to the city of Louisiana, in the county of Pike, State aforesaid, and said additions have been divided and laid out into streets, lots and blocks duly

numbered, and plats thereof giving the dimensions of said lots and blocks were duly filed in the office of the recorder of deeds of said county of Pike, as required by law, and that the defendant, Thomas L. Tinsley, is and was at the time of the institution of this suit in possession of the following part of said estate, claiming to own the same in fee simple as a remote grantee of said William H. Bartlett, to-wit: Beginning at the southeast corner of block 19 of William Luce's addition to the city of Louisiana, Missouri, which is also the northwest corner of Georgia and 14th street of said city; thence northward on the west line of 14th street, one hundred and fifty feet; thence westward parallel with Georgia street, one hundred and twenty feet; thence southward, parallel with 14th street, one hundred and fifty feet, to the north line of Georgia street; thence eastward, on the north line of Georgia street, to the place of beginning, the same being lots five and six and thirty feet off of the south ends of lots one and two in block number 19 of William Luce's addition to the city of Louisiana, Pike county, State of Missouri. The court further finds that the plaintiff is entitled to dower of the one-third part of the real estate above described and which the defendant is in possession of and claiming as his own, to hold and enjoy same during her natural life, and that on the second day of December, A. D. 1893, the plaintiff demanded of the defendant that he assign, admeasure and set apart to her, her said dower interest in said real estate, and that the defendant failed and refused so to do and wrongfully deforced her of her dower therein. Wherefore it is adjudged and decreed by the court that the plaintiff is entitled to dower in said real estate, and that she is seized of the one-third part thereof for and during her natural life, and that she recover the damages that may be assessed for the wrongful deforcement of her dower interest in same. It further appearing that the said real estate is not susceptible of division without great injury thereto,

the appointment of commissioners to assign and admeasure dower is by the consent of the parties hereto waived. It is therefore considered and adjudged by the court that the plaintiff have and recover of the defendant all costs and charges in and about this cause laid out and expended, and ordered that execution may issue therefor.''

From this decree, appellant, in due form, has prosecuted his appeal.

The contentions of appellant, as disclosed by this record, are:

First. The husband of appellant was never seized of an estate in fee of the premises in question. He merely held them in trust for another.

Second. The property was conveyed by deed of general warranty by the husband of respondent in 1830, which was not executed by the wife, and her inchoate right of dower, if she had any, constituted a breach of the covenant at the time it was made.

Third. The husband died in 1893 and the dower right of the widow, if any, was subject to the provisions of section 8839, Revised Statutes 1889, which operates as an estoppel against the widow until all claims for damages for breach of the covenant contained in Bartlett's deed are ascertained and satisfied.

Fourth. Parties resident in this State should not be compelled to go into a foreign jurisdiction in order to hunt up property to satisfy any damages sustained by the breach of a covenant of warranty in the conveyance of land located here.

It will be observed that this case presents identically the same questions involved in the case of Bartlett v. Ball, 142 Mo. 28; however, it is to be noted, that while the same questions are involved in this controversy as were in that, the precise question that is presented by the declarations of law prayed for in this case was not urged in the Ball case.

Counsel for appellant very earnestly and ably pre-

sents the questions disclosed by the record and challenges the correctness of the legal conclusions reached by Judge SHERWOOD in the case of Bartlett v. Ball, supra, and requests this court to review that case.

The contention in this case, that plaintiff is estopped under the provisions of section 8839, Revised Statutes 1889, until all claims for damages for breach of the covenant contained in Bartlett's deed by attorney in fact are ascertained and satisfied, was the main question presented in the case of Bartlett v. Ball, supra. SHERWOOD, J., fully discusses that feature of the controversy, and that we may fully appreciate his review of the authorities and the conclusion reached, we here quote from his opinion on that subject. He says:

"The law of 1825, volume 1, revision of that year, page 333, when speaking of a widow's seeking enforcement of her dower, declares: 'Nor shall she be entitled to dower in any lands, tenements or hereditaments, until all just debts due or to be due by her deceased husband have been paid.' This law was repealed in 1835. Touching this law it has been ruled that it has no bearing in favor of anyone except a creditor of the estate, to whom, of course, a debt is owing. As the matter is concisely put in Thomas v. Hesse, 34 Mo. 13: 'The meaning of the law is, that among claimants of rights against the estate of a deceased husband, creditors claiming payment of their just debts are to be preferred to the widow claiming dower.' In the present instance defendant does not pretend to occupy the attitude of a creditor, and certainly a third person can not set up those debts as a bar to the widow's dower. [Ib.] In Walker v. Deaver, 79 Mo. loc. cit. 678, et seq., PHILIPS, C., speaking of the husband's liability on his covenant of warranty in circumstances like the present, said: 'The covenant created an obligation, but not a debt.' See, also, Nanson v. Jacob, 93 Mo. loc. cit. 343, as to the distinction to be taken between a claim for money 'due' and one based on unliquidated damages.

Besides, in the answer of defendant, there are no breaches of the covenant against incumbrances assigned, nor is it alleged that an eviction had occurred in consequence of any such breach, nor that an action had been brought for dower, judgment recovered, and that judgment satisfied. There could be no breach of the covenant against incumbrances until something of the sort aforesaid had occurred as the basis whereon to assign such breach, unless it were a breach occurring at the time of making the covenant, for which only nominal damages would have been recoverable. [Walker v. Deaver, supra, loc. cit. 678, and cases cited.]

"There are other reasons for doubting whether plaintiff is either estopped or barred from maintaining her action.

"At common law the heir was not bound by the obligation of his ancestor, only when expressly named; so that in an action against him as heir the averment was necessary that he was named in, and bound by, the obligation; and in addition to that, another requisite to recovery was that he should have assets by descent sufficient to meet the demand. And the same doctrine prevailed as to the necessity of expressly mentioning a devisee in a covenant in order to bind him. [Rawle on Cov. (5 Ed.), secs. 309, 311, 312; Tiedeman, Real Prop. (Enlarged Ed.), sec. 856.] Nor could the land be followed in his hands; he took the land, clear of all liabilities. [Ib. Plasket v. Beeby, 4 East, 485; Plunket v. Penson, 2 Atk. 290.]

"Upon this feature the learned author already cited observes: 'To prevent the injustice of a devise depriving a specialty creditor of means of satisfaction, the second section of the statute of fraudulent devises (3 Will. & Mary, c. 14) reciting that many persons, after having bound themselves and their heirs, had died seized of lands, and to the defrauding their creditors had devised the same, so that the creditors had lost their debts, declared that all wills, etc., should be taken,

as against such creditors and their executors, etc., to be void and of no effect; and the third section gave the creditors a right of action upon their specialties against the heir and devisee jointly, and the devisees were made liable in the same manner as heirs, notwithstanding alienation by them.' [Rawle on Cov., sec. 311.]

"In Sauer v. Griffin, 67 Mo. 654, it was held that an action could not be maintained on the bond of the testator against the devisee, nor the land devised followed in the hands of the latter, and that in this regard we were then governed by the provisions of the common law. This was in 1878. At the next revising session of the Legislature, the statute law on this subject (R. S. 1845, p. 220, sec. 8; 1 R. S. 1855, p. 356, sec. 8; G. S. 1865, p. 442, sec. 7) was amended by the passage of section 3944, Revised Statutes 1879, which is now section 8839, Revised Statutes 1889, which is the following: 'Lineal and collateral warranties, with all their incidents, are abolished; but the heirs and devisees of every person who shall have made any covenant or agreement shall be answerable, upon such covenant or agreement, to the extent of the lands descended or devised to them, in the cases and in the manner prescribed by law [and devisees shall be answerable to the same extent as provided by law in case of heirs.']   The words in brackets indicate the amendment.

"As under our laws of administering estates the obligations of the decedent, whether testate or intestate, bind the assets of the estate in the hands of the heir, no matter what form those obligations may assume, and as the section quoted makes a devisee equally answerable with an heir, it must be held, speaking in a general way, that the defect previously existing in the law was cured by the amended section.

"But further observations on that section and its application to the facts of this particular case are thought to be pertinent. It is to be noted that the covenant in question, though it mentions heirs, does not

mention devisees, so that under the common law then prevalent it is clear that the devisee was not bound by that covenant at the time of its execution.   Under these considerations the question arises whether the section under comment is. applicable in any event to this coven-.ant, and if so applicable, whether it would not be retrospective in its operation.   A law is always construed to be prospective 'unless the Legislature has so explicitly ·expressed its intention to make the act retrospective, that there is no place for a reasonable doubt on the subject.'   [Black's Const. Law, par. 198, p. 544.   See, also, Leete v. Bank, 115 Mo. 184, and cases cited; s. c., 141 Mo. 574.]

"Nor is it to be forgotten that retrospective laws are forbidden *eo nomine* by our State Constitution; and when this is the case it is immaterial whether or not the act interferes with vested rights.   [Cooley's Const. Lim. (6 Ed.) pp. 454, 455; Black's Const. Law, par. 197, p. 543.]   There is nothing, however, in the section which gives indication of other than prospective operation; if it did it would contravene the Constitution. The aspect of the section is altogether toward the future; it lets the 'dead past bury its dead.'   And as the wife's right to dower is inchoate, is in expectancy, and does not become vested until the death of the husband, it follows, of course, that such right may be modified or entirely abolished by the Legislature without contravening any vested right protected by the organic law. [Black's Const. Law, 430, 431; Cooley Const. Lim., 440, 441, and cases cited; Venable v. Railroad, 112 Mo. 103.]

"But it is not thought that the section under consideration was intended to affect, obstruct, or defeat the inchoate dower right of a wife, or such right when it becomes absolute in a widow by reason of her husband's death.   The Legislature of this State, over fifty years ago, enacted the following section in regard to dower:

" 'No act, deed or conveyance, executed or performed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the'estate of married women, ·and no judgment or decree confessed by, or recovered against him, and no laches, default, covin. or crime of the husband, shall prejudice the right and interest of the wife, provided in the foregoing sections of this act.' [R. S. 1835, p. 228, sec. 7.] This section has remained on our statute books ever since. [R. S. 1845, p. 431, sec. 8; R. S. 1855, p. 670, sec. 13; G. S., p. 521, sec. 13; R. S. 1879, sec. 2197; R. S. 1889, sec. 4525.] It is inconceivable that the Legislature should so sedulously and for so many years guard the inchoate and vested dower right of wife or widow by the strong and explicit terms of the above section, and yet in 1879 adopt a section, which would absolutely defeat that right, should the wife become a devisee. See the forcible observations of GANTT, P. J., on section 4525, in Blevins v. Smith, 104 Mo. loc. cit. 590, 591.

"We are therefore of the opinion that a reasonable construction of the two sections requires that in so far as the widow's dower is concerned, but no further, she may still be a devisee, and her mere dower right remain unaffected. This construction, we think, best comports with the legislative intention. Furthermore, the law of 1825 already quoted relates only to 'just debts due or to be due;' and in England, upon a similar statute, it was ruled that as. it only spoke of 'debts and actions of debt,' an action could not be maintained against a devisee of one who had given 'covenants for title.' [Wilson v. Knubley, 7 East 134.] To remedy this an amended law was passed which included 'covenants' as well as 'debts.' Moreover, it will not be presumed that the Legislature intended that the Act of 1825 should operate beyond the boundaries of this State, and had such been the intention it would have been wholly inoperative. [Wilson v. Railroad, 108 Mo. 588, and cases

cited; State v. Gritzner, 134 Mo. 512.]    In no point of view, therefore, can the judgment recovered by defendant be permitted to stand.''

We have carefully reviewed the authorities cited in the opinion, and we find that they fully support the conclusions reached.    The opinion is an able and exhaustive review of the authorities upon that subject, and is a full and fair discussion of the point presented. If the views there expressed and the conclusion reached as to the estoppel of a widow in her claim of dower, need any additional emphasis, we will quote the positive and emphatic position taken by this court in the case of Blevins v. Smith, 104 Mo. l. c. 588, and incidentally referred to by the learned judge in the Ball case. The court very forcibly announced the rule as to the interpretation of our statute in respect to dower.    It said, speaking through GANTT, J.:

''We have by statute adopted the common law in regard to dower.    Lord COKE says:    'There be three things highly favored in law, life, liberty and dower.' Chief Justice McKEAN, in Kennedy v. Nedrow, 1 Dallas, 438, asserts that 'dower is a legal, an equitable and moral right.    It is favored in a high degree by the law, and next to life and liberty held sacred.'    Strong as these terms are they are strengthened by our statute. Section 4525:    'No act, deed or conveyance executed or performed by the husband without the assent of the wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the estate of married women, and no judgment or decree confessed by or recovered against him, and no laches, default, covin or crime of the husband, shall prejudice the right and interest of the wife, provided in the foregoing sections of this chapter,' that is to say, the sections securing the widow her common-law and statutory dower.    Now at common law, and by our statute reaffirming it, 'the right of dower attaches whenever there is a seizin by the husband, during the marriage, of an estate of inheri-

tance, and, unless it is relinquished by the wife in the manner prescribed by law, it becomes absolute at the husband's death.'

" 'It is a right in law fixed from the moment the facts of marriage and seizin occur, and becomes a title paramount to that of any person claiming under the husband by subsequent act.' [Grady v. McCorkle, 57 Mo. 172.]"

We see no reason for departing from the law as declared by the court in Bartlett v. Ball. It is comparatively a recent utterance of this court, correctly declares the law, and finds support both in reason and authority.

This leaves but one question to be noticed, that is the contention that Bartlett simply held the land in suit in trust for Marshall Mann, hence, did not have such an estate in the land as would entitle the respondent to dower. In other words, it is claimed that while the deed to Bartlett from Mann was absolute on its face, and conveyed an estate in fee, yet the facts in this case would warrant the conclusion that there was an implied trust. There is no writing, so far as the record in this case discloses, creating a trust, hence, if any effort was made by the parties at the time to attach a trust to this land, it must have been done by parol.

If the conveyance of this land by Mann to Bartlett was a gift, the rule announced by Thornton on Gifts would apply. It is there said in the text:

"A gift by a deed, absolute on its face, will defeat a parol trust or reservation in the donor's favor. It has the effect of an unconditioned gift, the trust being void." [Thornton on Gifts and Adv., p. 373.]

This is not that character of cause in which a parol trust, even if positively shown, could defeat the claim of the widow for dower. If Marshall Mann was alive and in possession of this land, under a re-conveyance to him by Bartlett without his wife joining in the conveyance, in a suit against him for the assignment of

dower, he would clearly be estopped from asserting a parol trust in his favor. As against this widow of Bartlett, the appellant and his grantors, by virtue of Marshall Mann's deed, succeeded only to the rights that he had. It can not be said that they were innocent purchasers. The deeds were all of record: First, the deed from Marshall Mann and wife to Bartlett, conveying an absolute title to this real estate, the power of attorney from Bartlett to Mann without his wife being joined; next, the deed from Mann as attorney in fact for Bartlett to Charless, with no relinquishment of dower by the wife. All of these purchasers had constructive notice of these deeds, and notice as to whose interests were conveyed to them.

We have examined the evidence in this cause, and even viewing it in the most favorable light for appellant, we think it absolutely fails to establish a trust.

There are many cases in equitable jurisprudence where on account of fraud or mistake, resulting trusts are declared upon parol evidence. [Weiss v. Heitkamp, 127 Mo. 23; Price v. Kane, 112 Mo. 412.]

This does not belong to that class of cases. The deed from Marshall Mann and wife to Bartlett was absolute on its face, and for this court to announce the precedent, from the facts in this case, that a parol trust existed, and that Bartlett was simply a trustee, and thereby defeat his widow's claim of dower, would not be in harmony with the letter or spirit of our statute on that subject.

There was no error in the refusal of the trial court to give instruction numbered 2, asked by the defendant.

W. H. Bartlett died in 1893, hence, the law in force at the time her dower interest attached, was section 4535, Revised Statutes 1889, which provides:

"The widow shall have dower of real estate, although there may have been no actual possession or recovery of possession by the husband in his lifetime, and although the same may have been held by him

as joint tenant, or tenant in common, or coparcener."

It is apparent from this section that no actual possession on the part of Bartlett was necessary in order to entitle the widow to dower. [Davis v. Evans, 102 Mo. 164.]

We have carefully considered all the facts in this case as disclosed by the record, and we are of the opinion that the findings of the trial court were correct, and its judgment will be affirmed.

All concur.