GRAHAM PAPER COMPANY v. FRED GEHNER ET AL., Appellants.—59 S. W. (2d) 49.

Court en Banc, February 8, 1933.

*Stratton Shartel,* Attorney-General, for appellants; *Otto & Potter* and *Smith B. Atwood* of counsel.

*Lewis, Rice, Tucker, Allen & Chubb* for Graham Paper Company.

*Nagel, Kirby & Shepley* and *Harry W. Kroeger* for T. J. Moss Tie Company.

STURGIS, C.—Injunction to restrain the collection of certain income tax for 1927. The controversy arises from the different construction placed by the parties hereto on the amendment of 1927 to the income tax law, Laws 1927, page 475. This amendment was passed and approved March 23, 1927, and, under the Constitution, went into effect July 3, 1927. The principal object of the amendment was to change the basis of income taxes levied against and to be paid by corporations from the whole net income of corporations except that derived from interstate commerce to the net income derived from all sources within this State, including a reasonable proportion apportioned to this State from the net income derived partially within and partially without the State. The rate of taxation was continued at one per cent. By this amendment of 1927, supra, Section 13106, Revised Statutes 1919, the one in controversy, was made to read:

"Section 13106. Rates to be levied—when: There shall . . . be levied, assessed and collected for the calendar year 1927, and annually thereafter, and paid by every individual, . . . and by every corporation, joint stock company or association, . . . an annual tax of one per cent upon the taxpayer's entire net income from all sources within this state, including a reasonable proportion apportioned to this state of net income derived from business partially within and partially without the state which cannot be definitely allocated."

The plaintiff, a Missouri corporation, is located in St. Louis and its business for 1927 was partially within and partially without this State. The facts are not in dispute. The total net income of plaintiff for 1927 was agreed upon. The reasonable proportion of this net income for that year apportioned to this State under the above statute was agreed upon, to-wit, 42.47 per cent of the total net income earned should be taxed here, the balance of 57.53 per cent being foreign business and the income therefrom not taxable here. It is plaintiff's insistence that under the express terms of the statute above quoted, "for the calendar year 1927," the net income for the entire year of 1927 should be apportioned in this way and it should be required to pay only 42.47 per cent of such entire net income. The entire net income for the year in question was agreed to be $568,470.48, of which $241,429.41 was properly this State's share of such income, and on this amount, and no more, plaintiff was willing to pay the income tax of one per cent. On this basis plaintiff offered to pay $2,414.29 for its income tax for 1927. The defendant taxing officials objected to this method of computing the tax and refused to accept this amount in full payment. They base their objection to the method of computation on the fact that the amendment of 1927, called the new law, did not go into effect till July 3, 1927, and the part of the year 1927 prior to that date, approximately one-half, was governed by the old law which required that the tax for that

period be computed at one per cent of the entire net income, just as the tax for 1926 and prior years had been computed, and that no deduction for the first half of 1927 should be made from the net income for that period because of a large part of plaintiff's business being transacted outside of this State or partly within and partly without this State. In other words, defendants insist that the income tax should be computed under the old law for the first half of the year 1927 and under the new or amended law for the last half of that year. It was agreed that if so computed, the net taxable income would be increased $163,520 and the tax increase would be $1,635.20. This is the amount in dispute. The trial court granted the injunction.

■ ■ ■ The plaintiff bases its contention on the literal reading of the amended statute which provides that there shall be levied and collected "for the calendar year 1927"—all of it, an income tax of one per cent on only the proportional amount of the total income derived from business done within this State, and so the statute reads. To this the defendants reply that such amended statute did not go into effect till July 3, 1927, and therefore could not work any change in the income tax law as to the basis or mode of computing the tax till after that date, and that to hold otherwise and in accordance with plaintiff's contention, the amendment is "retrospective in its operation" and in contravention of Section 15, Article II, of our Constitution.

Defendants are clearly correct. A new or an amendment of an existing statute which reaches back and creates a new or different obligation, duty or burden which did not exist before the new law itself became effective, or which makes the obligation or burden begin at a date earlier than the date of going into effect of the law itself is retroactive in its operation and unconstitutional. A law is retroactive in its operation when it looks or acts backward from its effective date, and if it has the same effect as to past transactions or considerations as to future ones, then it is retrospective. [Leete v. State Bank, 115 Mo. 184, 198, 21 S. W. 788.]

In Bartlett v. Ball, 142 Mo. 28, 36, 43 S. W. 783, this court said: "Nor is it to be forgotten than retrospective laws are forbidden *eo nomine* by our State Constitution; and when this is the case it is *immaterial* whether or not the act *interferes with vested rights.* [Cooley's Constitutional Limitations (6 Ed.) pp. 454, 455; Black's Constitutional Law, par. 197, p. 543.] There is nothing, however, in the section which gives indication of other than prospective operation; if it did it would contravene the Constitution. . . . But it is not thought that the section under consideration was intended to affect, obstruct or defeat the *inchoate dower right of a wife,* or such right when it becomes absolute in a widow by reason of her husband's death." This statement of the law is approved in Bartlett v. Tinsley, 175 Mo. 319, 332, 75 S. W. 143.

■ Much this same question came before this court in Smith v. Dirckx, 283 Mo. 188, 198, 223 S. W. 104. In that case the Legislature of 1919, Laws 1919, page 718, amended the then existing income tax law so as to increase the rate from one-half of one per cent to one and one-half per cent and made the same applicable to the entire year of 1919, beginning January 1st, though the amended law did not go into effect till August 7, 1919, being ninety days after the adjournment of that Legislature. This court there held that this legislative act attempting to increase the rate of taxation so as to cover a period prior to the date the law itself went into effect was plainly retroactive in its operation and the increased rate could not apply to that portion of the year 1919 prior to its effective date, though the act plainly specified that it should be applied to the entire year 1919. This court, after quoting with approval the definition of retrospective laws given in Reed v. Swan, 133 Mo. 100, 108, 34 S. W. 483, said: "Applying the above definition to so much of the amendment of 1919 as undertook to assess an additional one per cent upon that portion of the net income for the calendar year 1919, which was received by appellant prior to the going into effect of said amendment, we are clearly of the opinion that it 'did create a new obligation or impose a new duty' in regard thereto and that the amendment does to that extent operate retrospectively, and is in violation of the above mentioned constitutional inhibition against retrospective laws." It was, therefore, held that the income tax for 1919 then in controversy should be computed under the old law for the portion of the year 1919 prior to the date the amendment of 1919 went into effect and under the amended law for the remainder of that year.

This last holding effectually answers the contention made here that the income tax for a given year is a unit and not proportionable for a part of the year at one rate and for another part at another rate, in that such tax does not become due till the end of the tax year and is then to be computed as an entirety for that year; and that prior to the maturity date it does not have even a potential existence or rise to the dignity of an obligation.

In Smith v. Dirckx, supra, this court said: "However, this should not operate to prevent the collection of a tax not exceeding one-half of one per cent for the period above mentioned. This for the reason that since the old law imposed a tax of one-half of one per cent upon that portion of his income which appellant received prior to the taking effect of the 1919 amendment, that portion of the amended rate which did not exceed the old rate did not create a new obligation or impose a new duty." The court then quoted from a Texas case, Texas v. Railway, 100 Tex. 153, thus: "The defendants in error claim that because the Legislature could not impose the tax for the portion of the year which expired before the law became

effective it cannot be enforced for any portion of the taxes for the year 1905. The fact that the Legislature had no power to levy the tax for the time anterior to that at which the law took effect does not render it void as a whole, but the court will give effect to it for that proportion of the time which expired after it became effective; that is, the court will sustain the tax so far as the Legislature had authority to impose it."

The theory that the net income tax for the year did not come into existence until the end of the year, and then as an entirety, and that the law which was in force at the end of the year and then acted on such income for the whole of the year, is not retrospective, was ably presented in the dissenting opinion in the Dirckx case, but was rejected.

In State ex rel. v. Bell Telephone Company, 316 Mo. 1008, 1011, 292 S. W. 1037, this court said: "Whether a tax rate may be different for different parts of a year, instead of taking the year as a unit for taxation purposes, was settled by this court in the case of Smith v. Dirckx, 283 Mo. 188. The Legislature may provide for an income tax rate prevailing part of the year with a different rate for the other part of the year."

In the case last cited, the Bell Telephone case, the Legislature in 1921 (Laws 1921, 1st Ex. Sess., p. 189) amended the income tax law, Section 13112, Revised Statutes 1919, which provided for an annual rate of one and one-half per cent, so as to lower the rate to one per cent beginning with 1922, and also provided that for the balance of the year 1921 after the amended act took effect the rate should be only one-half of one per cent. The amended act was passed and approved August 1, 1921, with an emergency clause intending to put the amendment into effect at once, but such emergency clause was held void and the amendment did not become effective till ninety days after the adjournment of the Legislature, to-wit, November 2, 1921. The question there presented for decision was which rate was in force between the date of the act as was intended and the date it actually became effective. This court held that to carry out the legislative intent as shown by the emergency clause would make the statute retrospective in its operation, saying: "To attempt to give the act effect from the time of its approval is to make it retrospective contrary to Section 15, Article II, of the Constitution. This was distinctly held by this court in construing this income tax law in Smith v. Dirckx, 283 Mo. 1. c. 197, 198. The law then had no force between the time of its passage and the time when it went into effect, November 2, 1921." [See Stouffer v. Crawford, 248 S. W. 581, 584.] This court so held, although the opposite holding would have decreased the amount of income tax received by the State.

■ ■ In this connection the plaintiff contends that although the amended law of 1927 is retrospective in its operation if construed

162

to cover a period antedating the time it went into effect, yet as it is detrimental to the State only, and not to the taxpayer, there is no valid objection, so far as the State is concerned, to the law being retrospective. The provision of the Constitution inhibiting laws retrospective in their operation is for the protection of the citizen and not the State. The law is stated in 12 Corpus Juris, 1087, thus: "The state may constitutionally pass retrospective laws impairing its own rights, and may impose new liabilities with respect to transactions already past on the state itself or on the governmental subdivisions thereof." [See New Orleans v. Clark, 95 U. S. 644.] This merely means that such laws are retroactive in their operation, but that the sovereign state may forego or waive its own rights and may be held to have done so by the enactment of the law called in question. It is, therefore, argued with much force that the act in question merely reduced the income taxes to be collected by the State, beginning with January 1, 1927, and though the act did not go into effect till July 3, 1927, the State could lawfully impair its own rights and relieve the taxpayer of part of the burden of taxes already incurred. Defendants' reply to this is that if the constitutional provision against retrospective laws is available to citizens only, and not to the State, there is another constitutional provision equally effective and clearly applicable in favor of the State as against legislative enactments purporting to release or extinguish obligations or liabilities to the State or any governmental subdivision of the same, to-wit, Section 51 of Article IV of the Constitution, which provides:

"The General Assembly shall have no power to release or extinguish, or authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any county or municipal corporation therein." The language of this constitutional provision is very broad and comprehensive in protecting the State against legislative acts impairing obligations due to it in that it prohibits the release or extinguishment, in whole or in part, not only of indebtedness to the State, county or municipality, but liabilities or obligations of every kind. It will be noticed that this constitutional provision is couched in the language and uses the same terms as are used with reference to retrospective laws. In determining what transactions or considerations are within the purview of retrospective laws, the courts use the same terms as are used in this constitutional provision, to-wit, liabilities or obligations, as well as debts. In contending in the Dirckx and Bell Telephone cases, supra, that income taxes not due or capable of ascertainment till the end of the year could not be the subject of a retrospective law, the same argument was used as is now used to exclude same from the constitutional provision just quoted, to-wit, that the income tax for the entire year is a unit and does not come into existence even as an obligation or liability till the end of the year, when for the first time

it was capable of ascertainment. That would be true as to being an indebtedness, but, as there pointed out, it is not true as to being an obligation or liability. This argument was rejected as not sound in the Dirckx and Bell Telephone cases, as it must be here. It was there held that an inchoate tax, though not due or yet payable, is such an obligation or liability as to be within the protection of the restriction against retrospective laws, and for the same reason we must hold that such inchoate tax is an obligation or liability within the meaning of the constitutional provision now being considered. In other words, if an unmatured tax has sufficient vitality to be protected in favor of the citizens against retrospective laws, it has sufficient vitality to be protected in favor of the State against being extinguished or released by legislative enactment.

The result is that the judgment of the circuit court should be and is reversed.

PER CURIAM:—The foregoing opinion by STURGIS, C., in Division One is adopted as the opinion of the court en banc. All concur.