CENTRAL EUREKA, INC., Plaintiff and Appellant, *v.* JUAN GALLARDO, TREASURER OF PORTO RICO, Defendant and Appellee.

No. 4355.  Argued March 28, 1928.—Decided March 19, 1929.

*J. H. Brown, G. E. González* and *C. Ruiz Nazario* for the appellant. *George C. Butte, Attorney General,* and *J. A. López Acosta* and *R. A. Gómez, Assistant Attorneys General,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

On August 6, 1925, the Legislature of Porto Rico passed

an Act, No. 74, entitled, "An Act to provide Revenues for the People of Porto Rico through the levying of certain Income Taxes, and for other purposes." Session Laws 1925, page 400.

Section 3 of the Act provides:

"(a) The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under sections 14 or 32. The term 'fiscal year' means an accounting period of twelve months ending on the last day of any month other than December. The term 'taxable year' includes, in the case of a return made for part of a year under the provisions of this title or under regulations prescribed by the Treasurer the period for which such return is made. The first taxable year, to be called the taxable year 1924, shall be the calendar year 1924 or any fiscal year ending during the calendar year 1924."

Section 66 provides: "This title shall take effect as of January 1, 1924."

Central Eureka brought a suit to recover taxes paid under protest and, among other things, attacked the constitutionality of the said act. We shall consider the appeal on its merits, although it is subject to dismissal inasmuch as the appellant failed to file an index. This we discovered when, after reading the briefs, we wanted to refer readily to the actual judgment rendered by the District Court of San Juan.

We find that the judgment rendered on June 23, 1927, held that the complaint did not lie. On appeal three errors are assigned. The first relates to the title; the second to the alleged lack of power of the legislature to make an act retroactive, and the third to the error of the court in not holding that the tax was not imposed according to the provisions of said Act No. 74.

The first assignment of error may more readily be decided after entering into a consideration of the second. The full terms of the latter are as follows:

"The court erred in not deciding that the provisions of Act No.

74, approved on August 6, 1925, making it retroactive to income obtained during 1924, were invalid, inasmuch as they were beyond the power given in such matters to the Legislature of Porto Rico by the Congress of the United States."

We agree with the appellant that if Congress enacts a law applicable throughout the United States, or perhaps in Federal territory alone, a body politic, like Porto Rico, can not pass an act inconsistent with the provisions of the Federal Act. Our agreement is subject to the reserve that a State or Territory may legislate for that part of the field not already covered by Federal legislation. *Gibbons* v. *Ogden,* 9 Wheat. 1. Nevertheless we hold, and the matter is important, that prior to 1913 and until the Federal Income Tax Act was approved Porto Rico had all the powers for passing an income tax act that the Congress itself had, if not something more. This follows from the general draft of legislative power given by the Organic Act, known as the Foraker Bill. Before the passage of the 16th Amendment Congress could not, unless proportioned to the census, impose a tax that could be considered a direct tax. *Pollock* v. *Farmer's Loan & Trust Co.,* 157 U. S. 429, 557. We said above, "if not something more," because when Porto Rico is imposing a tax throughout its whole territory the reasons that prompted the constitutional limitations on Congress do not exist.

The constitutional provision is as follows: "No Capitation or other direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore ordered to be taken." Article 1, section 9, clause 4, R. S. U. S. 21. The census or enumeration to which the Constitution referred was art. 1, section 2, clause 3, which provided that "Representatives and direct Taxes shall be apportioned among the several States . . . according to their respective numbers." In other words, if Congress, prior to the 16th Amendment, was imposing a general direct tax on income, it would have had to be apportioned among the States according to the rules laid down in

article 1, section 2, clause 3, *supra*. Where the several States are not concerned and only a Territory like Porto Rico is involved, Congress could legislate for it without the limitation contained in the cited paragraphs, and the draft of power given to Porto Rico was exactly equivalent. Hence, if Congress could pass a statute retroactive in its nature, so could Porto Rico. Incidentally, we may say that when in 1917 the latest Organic Act for Porto Rico was passed the constitutional limitation for taxes on incomes had been modified by the 16th Amendment, and hence the draft of power to Porto Rico in any case was almost unlimited.

There is nothing in the Constitution of the United States or in the Organic Act of Porto Rico that would prevent its legislature from passing an income tax law that was retroactive in its effect. As the court below pointed out, retroactive statutes may be generally passed unless there is a constitutional limitation, and it cited the case of *Smith* v. *Dirckx* (Mo.), 223 S. W. 104, 11 A.L.R. 510. On page 518 of 11 A.L.R. will be found a note of cases with a general conclusion that in the absence of express limitation income tax laws having a retroactive effect may be enacted. More particularly reference may be had to *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1. This principle was involved and accepted by the parties in *Fantauzzi* v. *Bonner*, 34 P.R.R. 464.

One of the principal arguments is that with the existence of a Federal act dated in 1924 the Legislature can not transcend its provisions. Counsel maintain that a limitation is contained in section 261 of the Congressional Act, the very section and its prototypes that have given Porto Rico a right to vary from the Federal Act. The section is as follows:

"In Porto Rico and the Philippine Islands the income tax shall be levied, assessed, collected and paid as provided by law prior to the enactment of this Act.

"The Porto Rico or the Philippine Legislature shall have power

by due enactment to amend, alter, modify or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively.''

The appellant says that the first paragraph, *supra,* prevents the enactment of such a law as passed by the Legislature of Porto Rico. Necessarily, however, this reasoning is dependent upon the theory that except as authorized by a specific or particular Federal statute Porto Rico has no right to pass a statute retroactive in its nature. There is evidently nothing in the words employed in section 261 that directly says that a statute retroactive in its effect may not be passed. The harm that the appellant wanted to avoid was the provisions of Act No. 74 imposing taxation more onerous than in previous years, but no averment that the Act is confiscatory or the like is even suggested.

Section 261 is in no sense a limitation. This was well discussed in the opinion of the court below as follows:

"Let us examine all the laws bearing relation with the Organic Act and see if it is possible to construe the provisions of section 261 above mentioned in such a way as to operate as a limitation on the powers conferred on the Legislature of Porto Rico. When the Federal Government approved the Jones Act it did so to make more liberal the government of Porto Rico, increasing the powers of its legislature and giving Porto Ricans greater intervention in the handling of governmental affairs. The Jones Act not only increased constitutional rights by granting American citizenship to the Porto Ricans, giving them greater liberties, extending their field of action, creating a legislature, but also giving them absolute liberty to legislate with regard to all local matters.

"In 1917, shortly after the approval of the Jones Act, the Congress of the United States even went a little farther, and by the Act imposing a War Tax on Incomes, granted Porto Rico a greater power, by authorizing our Legislature to repeal an act of the Congress of the United States. That is, the Federal Government has granted Porto Rico the greatest scope in the government of the Island that may be given to any possession under the American flag. And, in spite of all this, the plaintiff maintains that, by the phrase, 'provided by law prior to the enactment of this act,' appearing in section 261, the splendid structure created by the Jones Act be destroyed

and the power of the Legislature to pass a law with retroactive effect be limited."

As we have seen, Act No. 74, so far as it is retroactive at all, is so by its very terms. Sections 3 and 66, *supra*. Therefore section 3 of the Civil Code is not an obstacle to the passage of the act. We have no doubt that the legislative power is sweeping, and included a right to pass a retroactive law. The general principles were fully discussed in *Fantauzzi v. Bonner*, 34 P.R.R. 464, *supra*. We can not agree with counsel for appellant that the legislative powers of Porto Rico are in any way limited by the lack of a specific delegation. With general legislative powers given it Porto Rico has the right to tax, to exercise the right of eminent domain and to pass any other matter of general legislation.

This opinion is already more discursive than it need be, but we shall go a little farther. Supposing that the whole power of the Legislature to pass an income tax law did flow from the words used in section 261, nevertheless we think the language used shows a full intention of Congress to authorize Porto Rico to make its own income tax law. "To amend, alter, modify or repeal" are infinitives that are equivalent to the words, "to enact."

Reverting a little, if the Legislature may repeal all previous legislation, then, such legislation being repealed, under its general powers it may do what Congress itself can do and pass an act retroactive in its effect.

Personally, we doubt whether there is any real retroactive effect to Act No. 74 or any act like it. It was actually passed in August, 1925, and payment was to be made in 1926. The payments, therefore, were clearly to be made for prospective years and the appellant in this case actually paid taxes in February of 1926. The idea of legislation like the present is that a current tax is to be measured by the income of the previous year. If the Legislature in 1926 had done away with the collection of the income tax for 1927 and subsequent years, the total effect would have been to require the appel-

lant and others to pay an income tax on the year 1926 as measured by the income recovered in 1924. In any going business it is a fair presumption that the receipts would increase and a similar presumption would exist for the average income. No hardship is imposed unless the income, say for 1925, was in point of fact less than that received in 1924. Even then, on the law of averages, as receipts go up and down, there is compensation to the taxpayer.

We doubt whether any real constitutional question has been raised in this assignment of error. Certainly there is none in regard to the imposition of direct taxes, uniformity or the like.

The first assignment of error is that the district court erred in holding that the provisions of Act No. 74, approved on the 6th of August, 1925, making the same retroactive for the whole year of 1924, were not invalid, inasmuch as they violated the provision of section 34 of the Organic Act of Porto Rico which requires the expression in the title of the subject of the act. The specific words of section 34 in question are:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The argument is that the Act contains retroactive provisions that are not expressed in the title. We agree, however, with the government that an income tax is only a single subject; that whether a tax shall be retroactive or not is not a different subject matter, but merely the choice of the legislature. We think that this assignment of error proceeds from the same mistaken notion that, to a certain extent, underlay the second assignment of error, namely, that retroactive provisions are beyond the power of the local Legislature unless specially delegated. The Legislature of Porto Rico has full power to pass an act without saying in the

title whether it is prospective or retroactive, but the subject matter is not increased or diminished by the failure to specify.

The third assignment of error is as follows:

"The district court erred in not holding that the tax imposed, and whose return is sought, was not imposed in accordance with the provisions of Act No. 74, even under the supposition that the said Act was valid."

This assignment of error is in point of fact too general. *Villar & Co.* v. *Conde,* opinion of the Circuit Court of Appeals, 30 Fed. (2nd) 588.

The objection was that the treasurer as a taxing officer did not require a new return, but relied upon one presented by the appellant in 1921. We have the idea that under the authorities cited by the government the treasurer is not bound to call for a new return, but may use any one that he has on hand, at least until the taxpayer presents another.

The brief of the appellant was rather short, but nevertheless raised a number of questions which were extensively discussed by the attorney general, and this discussion or the suggestions contained therein have been of great use to us in writing this opinion.

The judgment appealed from will be affirmed.